## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| JODIE DEOLIVEIRA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No.: 3:26-cv-00465** |
| | ) | |
| EAST ALABAMA MEDICAL | ) | **JURY DEMANDED** |
| CENTER FOUNDATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** Plaintiff, Ms. Jodie DeOliveira ("Plaintiff" or "DeOliveira"), and files this Complaint against East Alabama Medical Center Foundation, ("Defendant"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1.      This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by the Pregnancy Discrimination Act, codified at 42 U.S.C. § 2000e(k) (hereinafter referred to as the "PDA"), the Pregnant Workers Fairness Act, codified at 42 U.S.C. § 2000gg (hereinafter referred to as the "PWFA"), and Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e et seq., (hereinafter referred to as "Title VII").

2.      Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3. The unlawful employment practices described herein were committed in Lee County, Alabama; therefore, venue lies in the United States District Court for the Middle District of Alabama, Eastern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a citizen of the United States of America over the age of nineteen (19) years, and currently resides in Harris County, Georgia.

5. Plaintiff was, at all times relevant to this Complaint, an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

6. Defendant is a domestic corporation with a principal mailing address of 2000 Pepperell Parkway, Opelika, Alabama 36801.

7. During all times relevant to this Complaint, Defendant conducted business in Alabama.

8. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and was, at all times relevant, Plaintiff's "employer."

## ADMINISTRATIVE EXHAUSTION

9. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant.

10. Charge number 420-2025-04196 (the "Charge") was filed on July 24, 2025. (Attached hereto as **Exhibit A**).

11.     Plaintiff received the Right to Sue ("RTS") for the Charge on or about March 12, 2026. (Attached hereto as **Exhibit B**).

12.     Plaintiff has now filed this Complaint within ninety (90) days of her receipt of the RTS and has, therefore, exhausted all administrative remedies with respect to the Charge before filing her claims with this Court.

## FACTS

13.     Plaintiff is a female who, at the time of the events which are the subject of this Complaint, was pregnant.

14.     Plaintiff was qualified to perform her essential job duties with or without reasonable accommodations.

15.     At all times herein, Plaintiff performed her job duties satisfactorily.

16.     Plaintiff was hired by Defendant on or about October 20, 2023, to work as a Registered Nurse.

17.     In January 2025, Plaintiff informed Defendant that she was pregnant and would require maternity leave beginning July 1, 2025.

18.     On January 25, 2025, Plaintiff was scheduled to work from 11:00 a.m. to 11:00 p.m.

19.     During Plaintiff's shift on January 25, 2025, at around 3:00 p.m., Plaintiff and other employees of Defendant received a text message encouraging them to spend the night at the workplace due to forecasted snow in the area.

3

20.     Later during her shift, around 6:00 p.m., Plaintiff was told that employees were mandated to stay overnight under Defendant's emergency protocol.

21.     Plaintiff was told that any employee who refused to spend the night at the workplace would be terminated immediately.

22.     Plaintiff notified her manager that she needed to leave to return home after her shift, as she did not have the necessary prenatal medication with her.

23.     Plaintiff's manager confirmed that leaving the workplace would result in termination.

24.     Plaintiff later heard that a similarly situated nurse who was not pregnant had been permitted to leave and was not punished.

25.     Plaintiff learned afterward that nurses were no longer required to stay overnight due to a lack of available beds.

26.     Plaintiff spoke with her manager to confirm that she was no longer required to stay overnight.

27.     After Plaintiff's manager confirmed that she was not required to stay, Plaintiff finished her shift and returned to her home.

28.     Plaintiff worked another twelve (12) hour shift after January 25, 2025, without any incident or discussion about what had occurred during her last shift.

29.     Four (4) days later, before her shift on January 29, 2025, Plaintiff was asked to arrive early to discuss the events of January 25, 2025.

4

30.    Plaintiff was told that she was reported for being "intimidating" to coworkers.

31.    Defendant did not identify any specific conduct constituting intimidation.

32.    On January 29, 2025, Defendant terminated Plaintiff's employment.

33.    Plaintiff has been significantly damaged both financially and emotionally due to Defendant's unlawful actions.

### COUNT I
### DISCRIMINATION
### IN VIOLATION OF TITLE VII (PDA)

34.    Plaintiff is a female who, at the time of the events which are the subject of this Complaint, was pregnant.

35.    At all times herein, Plaintiff performed her job duties satisfactorily.

36.    Plaintiff was hired by Defendant on or about October 20, 2023, to work as a Registered Nurse.

37.    In January 2025, Plaintiff informed Defendant that she was pregnant and would require maternity leave beginning July 1, 2025.

38.    On January 25, 2025, Plaintiff was scheduled to work from 11:00 a.m. to 11:00 p.m.

39.    During Plaintiff's shift on January 25, 2025, Plaintiff and other employees were notified that they were required to stay at the workplace overnight.

40.     Plaintiff notified her manager that she needed to leave to return home after her shift, as she did not have the necessary prenatal or mental health medication with her.

41.     Plaintiff's manager confirmed that leaving the workplace would result in termination.

42.     Plaintiff later heard that a similarly situated nurse who was not pregnant had been permitted to leave and was not punished.

43.     Plaintiff learned afterward that nurses were no longer required to stay overnight due to a lack of available beds.

44.     Plaintiff spoke with her manager to confirm that she was no longer required to stay overnight.

45.     After Plaintiff's manager confirmed that she was not required to stay, Plaintiff finished her shift and returned to her home.

46.     Plaintiff worked another twelve (12) hour shift after January 25, 2025, without any incident or discussion about what had occurred during her last shift.

47.     Days later, before her shift on January 29, 2025, Plaintiff was asked to arrive early to discuss the events of January 25, 2025.

48.     Plaintiff was told that she was reported for being "intimidating" to coworkers.

49.     Defendant did not identify any specific conduct constituting intimidation.

50.     On January 29, 2025, Defendant terminated Plaintiff's employment.

51.     Plaintiff did not behave in a way that was intimidating or out of the ordinary.

52.     Plaintiff had been permitted to work a full shift after the reports of her alleged "intimidation" were made.

53.     Other employees who were not pregnant were not terminated after asking to leave.

54.     Plaintiff's termination was motivated by her pregnancy.

55.     Plaintiff has been significantly damaged both financially and emotionally due to Defendant's unlawful actions.

## COUNT II
## FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE PWFA

56.     Plaintiff is a female who, at the time of the events which are the subject of this Complaint, was pregnant.

57.     Plaintiff was qualified to perform her essential job duties with or without reasonable accommodations.

58.     Plaintiff was hired by Defendant on or about October 20, 2023, to work as a Registered Nurse.

59.    In January 2025, Plaintiff informed Defendant that she was pregnant and would require maternity leave beginning July 1, 2025.

60.    On January 25, 2025, Plaintiff was scheduled to work from 11:00 a.m. to 11:00 p.m.

61.    During Plaintiff's shift on January 25, 2025, Plaintiff and other employees were notified that they were required to stay at the workplace overnight.

62.    Plaintiff notified her manager that she needed to leave to return home after her shift, as she did not have the necessary prenatal medication with her.

63.    Defendant failed to accommodate Plaintiff's pregnancy.

64.    Rather than engaging in the interactive process with Plaintiff, Plaintiff's manager confirmed that leaving the workplace would result in termination.

65.    Plaintiff returning home after her scheduled work hours would not have imposed an undue hardship on Defendant.

66.    The employee who was scheduled to relieve Plaintiff of her duties had already arrived, so Plaintiff's patients would still receive care upon her leaving.

67.    Plaintiff has been significantly damaged both financially and emotionally due to Defendant's unlawful actions.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE PWFA

68. Plaintiff was qualified to perform her essential job duties with or without reasonable accommodations.

69. Plaintiff was hired by Defendant on or about October 20, 2023, to work as a Registered Nurse.

70. In January 2025, Plaintiff informed Defendant that she was pregnant and would require maternity leave beginning July 1, 2025.

71. On January 25, 2025, Plaintiff was scheduled to work from 11:00 a.m. to 11:00 p.m.

72. During Plaintiff's shift on January 25, 2025, Plaintiff and other employees were notified that they were required to stay at the workplace overnight.

73. Plaintiff notified her manager that she needed to leave to return home after her shift, as she did not have the necessary prenatal medication with her.

74. Plaintiff's manager confirmed that leaving the workplace would result in termination.

75. Plaintiff later heard that a similarly situated non-pregnant employee had been permitted to leave.

76. Plaintiff learned afterward that nurses were no longer required to stay overnight due to a lack of available beds.

77. Plaintiff spoke with her manager to confirm that she was no longer required to stay overnight.

9

78.    After Plaintiff's manager confirmed that she was not required to stay, Plaintiff finished her shift and returned to her home.

79.    Plaintiff worked another twelve (12) hour shift after January 25, 2025, without any incident or discussion about what had occurred during her last shift.

80.    Days later, before her shift on January 29, 2025, Plaintiff was asked to arrive early to discuss the events of January 25, 2025.

81.    Plaintiff was told that she was reported for being "intimidating" to coworkers.

82.    Plaintiff did not behave in a way that was intimidating or out of the ordinary.

83.    Defendant did not identify any specific conduct constituting intimidation.

84.    On January 29, 2025, Defendant terminated Plaintiff's employment.

85.    Plaintiff had been permitted to work a full shift after the reports of her alleged "intimidation" were made.

86.    Defendant terminated Plaintiff in retaliation for requesting reasonable accommodations due to her pregnancy.

87.    Plaintiff has been significantly damaged both financially and emotionally due to Defendant's unlawful actions.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A.    Back pay for lost income and any other compensatory damages;

B.    Reinstatement or front pay if the Court determines reinstatement is impractical;

C.    Liquidated damages equal to the amount of back pay;

D.    Punitive damages;

E.    A reasonable attorneys' fee;

F.    Plaintiff's costs and expenses;

G.    Interest on all monies owed; and

H.    Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 10th day of June 2026.

s/*Anthony D. Michel*

Anthony D. Michel (ASB-6809-064M)
Hannah C. Dillashaw (ASB-2048-K17W)
*Attorneys for Plaintiff*

**MICHEL ALLEN & SINOR**
1900 International Park Dr, Suite 140
Birmingham, AL 35243
Telephone: (205) 980-5700
Facsimile: (205) 994-2819
anthony@mas-firm.com
hannah@mas-firm.com

11

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

East Alabama Medical Center Foundation
2000 Pepperell Parkway
Opelika, AL 36801